LILLEHAUG, Justice
(dissenting).
I respectfully dissent because, based on his admitted conduct, respondent should never again practice law in the State of Minnesota.
Respondent admits that he was both the attorney and the secretary of a corporation, JC Funding Solutions, Inc., headquartered in respondent’s office, that engaged in at least three fraudulent investment schemes. The three frauds were accomplished by wire transfers into and out of respondent’s attorney trust account.[1] Respondent admits that he used his trust account as the vehicle for transfers of $2,515 million on the first scheme, $1 million on the second scheme, and $1.2 million on the third scheme, for a total of $4,715 million.
Respondent admits that he participated in and assisted in the first two fraudulent schemes and thereby violated Rules 1.2(d) and 8.4(c) of the Minnesota Rules of Professional Conduct. What is particularly serious is that, even after he had notice that the first and second schemes were fraudulent, and even after victims of the second scheme filed an ethics complaint against him, respondent continued to participate in and assist JC Funding Solutions. According to the facts admitted, respondent used his trust account to facilitate the third scheme. He also made a misrepresentation to the investor and disbursed funds contrary to escrow instructions. He acknowledges that he thereby violated Minn. R. Prof. Conduct 1.15(c)(4) and 8.4(c).
Taking into account his acts participating in and assisting the three fraudulent schemes, and considering his status as secretary and attorney for the corporation orchestrating the seven-figure frauds, cases considering acts of similar gravity suggest that respondent should be disbarred. See In re Oberhauser, 679 N.W.2d 153, 156, 160 (Minn.2004) (disbarring attorney for using trust account in $11 million fraud scheme);[2] In re Clasen, 443 N.W.2d 190, 191 (Minn.1989) (order) (disbarring attorney who engaged in a series of deceptive financial transactions with unsophisticated investors totaling approximately $97,000); In re Larson, 324 N.W.2d 656, 658-59 (Minn.1982) (disbarring attorney for, among other things, making misrepresentations to investors, failing to file income tax returns, and failing to cooperate with the Director). At the very least, respondent qualifies for a suspension considerably longer than 2 *791 years.[3]
To protect the public and to deter the use of attorney trust accounts as vehicles for fraud, respondent should be disbarred or, at a minimum, indefinitely suspended for at least 5 years. It is true, as both the Director and respondent note, that respondent has not been charged with criminal fraud or swindle. Typically, sizable interstate investment frauds centered in Minnesota are investigated by federal authorities (such as the FBI and the IRS) and prosecuted by the United .States Attorney. Nothing in the record of this case tells us whether federal or state authorities have investigated the three fraudulent transactions totaling at least $4.7 million, which were orchestrated out of respondent’s office by an entity for which respondent served as officer and attorney. But the possibility that these three frauds may not yet have appeared on law enforcement’s radar screen — and that applicable statutes of limitation may be near expiration— should not save respondent from disbarment.

. Respondent’s Wells Fargo account was entitled "BJE, Inc. Attorney Escrow Account." According to public records of the Secretary of State, respondent was the chief executive officer and registered agent of BJE, Inc., a corporation created by respondent pursuant to Minnesota Statutes Chapter 302A. Minnesota does not allow the corporate practice of law except through professional firms organized under Chapter 319B. See Minn.Stat. § 481.02, subd. 2 (2014). Therefore, a professional firm may not use "Inc”, in its name. See Minn.Stat. § 319B.05 (2014).

. The investment scheme in Oberhauser was based on the idea that $100 million in treasury bonds could be "leased” and then traded for an enormous profit. 679 N.W.2d at 155. One of the three investment frauds which respondent assisted and participated in was based on the same idea.

. See In re Crosby, 577 N.W.2d 711, 711 (Minn.1998) (order) (suspending for 5 years an attorney convicted of theft by swindle); In re Perry, 494 N.W.2d 290, 292, 295 (Minn.1992) (suspending an attorney for 5 years for misappropriating over $430,000 from his mother’s trust); In re Daffer, 344 N.W.2d 382, 383 (Minn.1984) (suspending an attorney for 5 years for misappropriating over $172,000 mistakenly credited to him, using funds to engage in a fraudulent scheme); In re Scallen, 269 N.W.2d 834, 835-37 (Minn.1978) (suspending an attorney for 5 years for participation in fraud that resulted in misappropriation of over $3 million).